UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA LUND, individually and as successor-in-interest to WILLIAM LUND deceased; DAVID LUND, an individual; and SHEILA LUND, an individual, as legal heirs of WILLIAM LUND, deceased, <br><br>Plaintiffs,<br><br>v.<br><br>CRANE COMPANY, GENERAL DYNAMICS CORPORATION, ELECTRIC BOAT CORPORATION,<br><br>Defendants. | Case No. 2:13-cv-02776-WGY |

YOUNG, D.J.[1]                                May 10, 2016

**MEMORANDUM OF DECISION**

I.  **INTRODUCTION**

   This action arises out of a suit brought by Victoria Lund (individually and as personal representative of the estate of William Lund), David Lund, and Sheila Lund (the latter two both individually and as legal heirs of William Lund) (collectively,

---

   [1] Of the United States District Court for the District of Massachusetts, visiting judge for pre-trial purposes by order of Chief Judge George H. King. Order Chief Judge, May 1, 2014, ECF No. 431.

[1]

the "Plaintiffs") to recover for injuries suffered by the deceased William Lund ("Lund"), a former U.S. Navy Machinist Mate. The Plaintiffs claim Lund's injuries are attributable to his exposure to asbestos dust and fibers from products manufactured by Defendants Electric Boat Corporation ("Electric Boat") and General Dynamics Corporation ("General Dynamics") (together, the "Defendants").

The Plaintiffs filed a complaint on April 1, 2013, in the Superior Court for the County of Los Angeles, bringing claims for negligence, breach of express and implied warranties, strict liability in tort, and premises owner/contractor liability. Notice Removal Action Pursuant 28 U.S.C. §§ 1442(a)(1) & 1446(a) ("Removal Notice & Compl."), ECF No. 1. Viad Corp ("Viad"), one of the defendants in the case, timely removed the case to federal court on April 13, 2013, id., and discovery began. Joint Case Mgmt Order, ECF No. 479.

Subsequent to discovery, Electric Boat and General Dynamics filed motions for summary judgment. Def. General Dynamics Corporation's Notice Motion and Motion Summ. J. or, Alternative, Summ. Adjudication, ECF No. 619; Def. General Dynamics Corporation's Mem. Law Supp. Mot. Summ. J. or, Alternative, Summ. Adjudication ("Gen. Dynamics's Mem."), ECF No. 619-1; Def. Electric Boat Corporation's Notice Mot. and Mot. Summ. J. or, Alternative, Summ. Adjudication, ECF No. 622; Def. Electric Boat

[2]

Corporation's Mem. Law Supp. Mot. Summ. J. or, Alternative, Summ. Adjudication ("Elec. Boat's Mem."), ECF No. 622-1. The Plaintiffs opposed these motions. Pls.' Mem. Law Opp'n Electric Boat Corporation's Mot. Summ. J. or Partial Summ. J. ("Pls.' Opp'n Elec. Boat"), ECF No. 678; Pls.' Mem. Law Opp'n General Dynamics Corporation's Mot. Summ. J. or Partial Summ. J. ("Pls.' Opp'n Gen. Dynamics"), ECF No. 679.[2] Upon hearing oral argument, the Court denied the Defendants' motions but for the sophisticated-user defense issue, which it took under advisement. Minutes of Mot. Hearing, ECF No. 757. On March 1, 2016, the Court entered an order denying General Dynamics and Electric Boat's motions for summary judgment in full. Order, ECF No. 829. It now explains its reasoning for doing so.

## II. ANALYSIS

General Dynamics and Electric Boat advance three arguments in support of their motions for summary judgment. First, they argue that they did not manufacture a "product" and therefore are entitled to judgment as matter of law on the plaintiffs'

---

[2] Several other of the original defendants also filed motions in this action. Some of these parties settled before the case could reach the summary judgment stage, and some of the parties settled after filing a motion for summary judgment, but before the date of the hearing. Motions by Defendants Crane Co., Viad, General Dynamics, and Electric Boat remained before this Court as of the date of their scheduled hearings. From the bench, the Court granted Viad's motion and denied Crane's motion without prejudice. Minutes of Mot. Hearing, ECF No. 757.

strict products liability claims. Elec. Boat's Mem. 6; Gen. Dynamics's Mem. 6. Second, they argue that the "sophisticated user" defense precludes liability. Elec. Boat's Mem. 7-13; Gen. Dynamics's Mem. 7-13. Third, they argue that they are immune from liability on the basis of the "government contractor" defense. Elec. Boat's Mem. 13-18; Gen. Dynamics's Mem. 13-19. The Court addresses each of these arguments in turn, after first outlining the relevant legal framework.

### A. Legal Framework

The parties agree that this case arises under admiralty jurisdiction and is governed by maritime law. See Pls.' Opp'n Elec. Boat 8; Pls.' Opp'n Gen. Dynamics 8; Elec. Boat's Mem. 5; Gen. Dynamics's Mem. 5. In addition, state law -- specifically California law -- supplements that body of law where it is not in conflict with general maritime law or federal statute.[3] See Wilburn Boat Co. v. Fireman's Ins. Co., 348 U.S. 310 (1995).

Under Federal Rule of Civil Procedure 56, summary judgment for the Defendants is proper if they have established that there is no genuine dispute of material fact and that they are entitled to judgment as matter of law. Fed. R. Civ. P. 56(a).

---

[3] The Defendants recognize this point in their memoranda. See Elec. Boat Mem. 7; Gen. Dynamics Mem. 7. Although the Plaintiffs do not directly state this and dispute the application of a particular state law defense to this case, they do not argue that state law ought not apply at all. See Pls.' Opp'n Elec. Boat 14-15; Pls.' Opp'n Gen. Dynamics 14-15.

The Defendants, as movants, bear the burden of informing the Court of the basis of their motions, and identifying those portions of the evidence that demonstrate the absence of a genuine issue of fact upon all material points. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If they satisfy their burden, then the Plaintiffs must, relying on evidence, demonstrate the existence of a genuine issue of material fact. See id. In evaluating the Defendants' motions, the Court must view all facts in the light most favorable to the nonmoving party. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir. 1986). The Court's ultimate inquiry is "whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). If so, the Court must deny the motion for summary judgment.

### B. Whether the Defendants Manufactured a "Product" for Strict Liability Purposes

General Dynamics and Electric Boat each argue that the Plaintiffs' strict liability claims must fail because a Navy ship is not a "product" for strict liability purposes. Elec. Boat's Mem. 6; Gen. Dynamics's Mem. 6. Although the precedent the Defendants rely on in support of this proposition is only

persuasive, see id. (citing Mack v. General Electric Co., 896 F.Supp.2d 333, 345 (E.D. Pa. 2012)), the Plaintiffs apparently do not challenge it. Instead, the Plaintiffs argue in response that their strict liability allegations are targeted at more than just the Defendants' Navy vessels, and that the Defendants' failure properly to respond to discovery requests has hampered the Plaintiffs' ability to identify other asbestos-containing products for which the Defendants ought be held strictly liable. Pls.' Opp'n 11-12. Because the Defendants have failed adequately to demonstrate the absence of a genuine issue of material fact as to the involvement of other asbestos-containing products besides the Navy ships, summary judgment on this ground is inappropriate.

### C. Sophisticated-User Defense

Electric Boat and General Dynamics next argue that the sophisticated-user defense precludes liability for the Plaintiffs' alleged injuries. See Elec. Boat's Mem. 7-13; Gen. Dynamics's Mem. 7-13. Their argument hinges on the notion that it is the sophistication of the Navy -- as the purchaser and intermediary -- rather than that of the individual user of the Defendants' products (here, Lund), that determines whether this affirmative defense applies. Elec. Boat's Mem. 11-13; Gen. Dynamics's Mem. 11-13. The Plaintiffs, meanwhile, argue that for the purpose of the sophisticated-user defense, what matters

[6]

is <u>Lund's</u> sophistication, which the Defendants have not proven. Pls.' Opp'n Elec. Boat 13-18; Pls.' Opp'n Gen. Dynamics 13-18.

<u>Johnson</u> v. <u>American Standard, Inc.</u>, 179 P.3d 905 (Cal. 2008) provides the basic legal framework for the sophisticated-user defense under California law:

> The sophisticated-user defense exempts manufacturers from their typical obligation to provide product users with warnings about the products' potential hazards. The defense is considered an exception to the manufacturer's general duty to warn consumers, and therefore, in most jurisdictions, if successfully argued, acts as an affirmative defense to negate the manufacturer's duty to warn.
>
> Under the sophisticated-user defense, sophisticated users need not be warned about dangers of which they are already aware or should be aware. Because these sophisticated users are charged with knowing the particular product's dangers, the failure to warn about those dangers is not the legal cause of any harm that product may cause. The rationale supporting the defense is that the failure to provide warnings about the risks already known to a sophisticated purchaser usually is not a proximate cause of the harm resulting from those risks suffered by the buyer's employees or downstream purchasers. [T]his is because the user's knowledge of the dangers is the equivalent of prior notice. . . .
>
> [T]he defense applies equally to strict liability and negligent failure to warn cases. The duty to warn is measured by what is generally known or should have been known to the class of sophisticated users, rather than by the individual plaintiff's subjective knowledge.

<u>Id.</u> at 910-11. While these background principles are instructive, they do not tell the whole story. This case, unlike <u>Johnson</u>, involves a sophisticated <u>intermediary</u>,

[7]

specifically the Navy. See Pfeifer v. John Crane, 164 Cal. Rptr. 3d 112, 128-131 (Cal. App. 2013) (explaining the concept of "sophisticated intermediary"). In other words, Lund did not receive the products directly from the Defendants, but rather used them in his capacity as a servicemember for the Navy. Thus, the critical questions in this case are (1) whether the application of the sophisticated-user defense turns on the Navy's knowledge or Lund's knowledge, and, even if it is Lund's knowledge, (2) whether the Court ought impute to Lund any relevant knowledge that the Navy possessed. Johnson did not resolve these questions, and neither does any subsequent case from the California Supreme Court.

In addressing these issues, the Defendants urge this Court to adopt the reasoning of Gottschall v. General Elec. Co., No. 2:11-cv-60035-ER, 2011 WL 6424986 (E.D. Pa. Dec. 9, 2011). See Elec. Boat's Mem. 11-13; Gen. Dynamics's Mem. 11-13. In that case, the court, applying California law, granted the defendant's summary-judgment motion on the basis of the sophisticated-user defense. Id. at *1 n.1. It concluded that the Navy's sophistication relieved the defendant -- a manufacturer of allegedly asbestos-containing products to which the plaintiff was exposed -- of its duty to warn, regardless of whether the plaintiff himself was a sophisticated user. Id. at *1 n.1.

[8]

At least two of California's Courts of Appeal, however, have since rejected this approach. See Pfeifer 220 Cal. App. 4th at 1296; Stewart v. Union Carbide Corp., 190 Cal. App. 4th 23, 28 (2010). Indeed, in Pfeifer, the Court of Appeal for the Second District held that "in actions by employees or servants, the critical issue concerns their knowledge (or potential knowledge), rather than an intermediary's sophistication." Pfeifer 220 Cal. App. 4th at 1296 (emphasis added). The Pfeifer court emphasized that in Johnson, "the Supreme Court concluded that 'under the sophisticated-user defense, the inquiry focuses on whether the plaintiff knew, or should have known, of the particular risk of harm from the product giving rise to the injury.'" Id. (quoting Johnson, 179 P.3d at 915). Further, "Johnson did not impute an intermediary's knowledge to the plaintiff[.]" Stewart, 190 Cal. App. at 28.[4]

Consistent with Johnson, Pfeifer, and Stewart, the Court concludes that the Defendants were required to show that Lund was a sophisticated user in order successfully to assert this defense. To prevail on this issue on summary judgment, the Defendants would have had to establish that, even with the Court

---

[4] Federal courts in California applying the sophisticated user doctrine have followed Pfeifer and Stewart. See, e.g., Willis v. Buffalo Pumps Inc., 34 F.Supp.3d 1117, 1128 (S.D. Cal. 2014); Castellanos v. Louisville Ladder, Inc., No. C-082009MMC, 2009 WL 1299133, at *1 (N.D. Cal. May 11, 2009).

taking all inferences in the Plaintiffs' favor, there was no genuine dispute that there "some basis" for the Defendants to believe that Lund "kn[ew], or should [have] kn[own]" of the dangers its products posed, besides the mere fact of the Navy's sophistication. Pfeifer, 220 Cal.App.4th at 1296-97. The Defendants could have created a closer question for the Court by, for example, "offer[ing] evidence that [they] reasonably believed that the [Navy] would warn the users; that the employees or servants knew or should have known of the dangers, in view of their experience or training; or that the specific dangers were so readily known and apparent to the intermediary that it would be expected to protect its employees or servants." Id. at 1297 (internal citations and quotation marks omitted).

Here, the Defendants have failed to provide any such evidence; instead, they focus exclusively on the Navy's "state-of-the-art knowledge." See Elec. Boat's Mem. 13; Gen. Dynamics's Mem. 13. Under these circumstances this argument is insufficient to show that the Defendants are entitled to judgment as matter of law on the basis of the sophisticated-user defense.[5]

---

[5] The Court's holding -- that Lund's, and not the U.S. Navy's, sophistication is relevant -- renders extensive analysis of the U.S. Navy's sophistication unnecessary. Were the Court to weigh in on the issue, it would rule that here, where the Plaintiffs appear to accept the Navy's sophistication, rendering

## D. Government-Contractor Defense

The Defendants next argue that they are immune from liability on the basis of the government-contractor defense. See Elec. Boat's Mem. 13-18; Gen. Dynamics's Mem. 13-18.

Government contractors are exempt from liability for injuries arising from defective military equipment under the government-contractor defense "when (1) the United states approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers of the use of the equipment that were known to the supplier but not to the United States." Boyle, 487 U.S. 500, 512 (1988). The defendant bears the burden of demonstrating that this affirmative defense applies. Snell v. Bell Helicopter Textron, 107 F.3d 744, 746 (9th Cir. 1997).

---

it undisputed, the Court would proceed on the assumption that the U.S. Navy is in fact a "sophisticated user."
   Generally, however, it must be remembered that the sophisticated user defense is an affirmative bar on which General Dynamics and Electric Boat bear the burden of proof. Thus, notwithstanding the point-counterpoint local rules governing summary judgment practice on the instant motions, see C.D. Cal. R. 56-1, 56-2, it is not enough to point to the Plaintiffs' lack of opposition as establishing the point. This is because as the Supreme Court made clear in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000), the factfinder is free to disbelieve the affirmative case even in the absence of rebuttal. Local Rules must be read as limited to situations where the party seeking summary judgment does not bear the burden of proof. Where -- as here -- the movant does bear that burden, summary judgment must remain beyond its grasp unless it can clinch the issue with the nonmovant's actual admissions (not just silence or a failure to produce contrary evidence).

[11]

Further, on a motion for summary judgment, the defendant must not only establish the applicability of this defense, but also convince the court that "no reasonable jury could fail to find that the defense ha[s] been established." Id.

The Plaintiffs argue that the Defendants have failed to establish the first of these elements. See Pls.' Opp'n Elec. Boat 19-23; Pls.' Opp'n Gen. Dynamics 19-23. Specifically, they argue that the Defendants have not shown the requisite level of interaction between a contractor and the government in order to satisfy the first element. Pls.' Opp'n Elec. Boat 19-23; Pls.' Opp'n Gen. Dynamics 19-23.

In order to satisfy the first element -- i.e., to show that "the United States approved reasonably precise specifications[,]" Boyle, 487 U.S. at 512 -- a defendant must show that "the government's approval [was] . . . more than a cursory 'rubber stamp' approving the design. Rather, approval must result from a continuous exchange and back and forth dialogue between the contractor and the government." Getz v. Boeing Co., 654 F.3d 852, 861 (9th Cir. 2011) (internal quotation marks and citations omitted). Moreover, the defendant must show this level of governmental involvement with respect to the design of the particular element that gives rise to the plaintiff's claim. See Snell, 107 F.3d at 747.

Here, the Defendants note that the Navy vessels at issue were "assembled" and "designed with the special needs of the Navy in mind." Elec. Boat's Mem. 15; Gen. Dynamics's Mem. 15. They point out that the Navy provided the Defendants with plans that laid out "the specific model/type/manufacturer of the equipment that ship manufacturers were to use and . . . monitored compliance with its regulations." Elec. Boat's Mem. 16; Gen. Dynamics's Mem. 17. Furthermore, they argue that, for the purpose of the first prong of <u>Boyle</u>, the Navy's acceptance of the vessels at issue demonstrates the Navy's approval. See Elec. Boat's Mem. 16; Gen. Dynamics's Mem. 16-17 (asserting that any privately assembled vessels "subsequently accepted by the Navy would have had to comply with the specifications, instructions, and guidelines found in the Navy's contracts regarding this work.")

The Court agrees with the Plaintiffs that the Defendants have not met the "reasonably precise specifications" requirement, as developed by the Ninth Circuit in the wake of <u>Boyle</u>. That the Navy provided the Defendants with specifications and then accepted vessels presumably built in accordance with those specifications is insufficient to demonstrate the type of "continuous exchange" this Circuit requires for a defendant to prevail on the government contractor defense. <u>Butler</u>, 89 F.3d 582, 585 (9th Cir. 1996). Indeed, the

[13]

Ninth Circuit has reversed the grant of summary judgment on the basis of the government-contractor defense where the defendant provided evidence of substantially more interaction between the government and the private contractor than is present in the instant case (at least in the record currently before the Court). See Snell, 107 F.3d at 747-48. As the Defendants fail to satisfy the first prong of the government contractor defense under Boyle, they are not entitled to judgment as matter of law on this group.

## III. CONCLUSION

Based on the foregoing analysis, the Court rejected each of the Defendants' proffered grounds for summary judgment. As the Defendants failed to convince this Court that they were entitled to judgment as matter of law, their motions, ECF Nos. 619 & 622, were **DENIED**.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE