O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VICTORIA LUND, individually and as successor-in-interest to WILLIAM LUND, deceased; DAVID LUND, an individual; and SHEILA LUND, an individual, as legal heirs of WILLIAM LUND, Deceased, | ) ) ) ) ) ) ) ) ) | Case No. CV 13-02776 DDP (VBKx)  **ORDER DENYING DEFENDANTS ELECTRIC BOAT CORPORATION AND GENERAL DYNAMICS CORPORATION'S MOTION FOR RECONSIDERATION**  [Dkt. 852] |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY, et al., | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Presently before the court is Defendants Electric Boat Corporation and General Dynamics Corporation's ("Defendants") Motion for Reconsideration of the court's Order Denying Summary Adjudication of Plaintiff's Strict Liability Claims. (Dkt. 852.) Having considered the submissions of the parties, heard oral argument, and reviewed the evidence, the court DENIES the motion for reconsideration and adopts the following order.

**I. BACKGROUND**

The court has set forth the relevant background in a prior memorandum of decision addressing Defendants' Motion for Summary Judgment. (See Dkt. 845.) In brief, Plaintiffs, individually and as legal heirs and representatives of William Lund's estate, brought this action to recover for injuries suffered by Mr. Lund, a former U.S. Navy Machinist Mate. (Dkt. 1, ¶ 8.) According to Plaintiffs, Mr. Lund's injuries and mesothelioma diagnosis were attributable to his exposure to asbestos dust and fibers during the construction and maintenance of various U.S. Navy ships manufactured by Defendants. (Id.) In particular, Plaintiffs allege that Mr. Lund was exposed to asbestos while working "in the engineering spaces on the USS Lafayette" at Electric Boat division's shipyard and while working on the USS Gato at General Dynamics' shipyard. (Plaintiffs' Responses to Special Interrogatories Propounded by Defendant General Dynamics Corporation's, Set One, attached as Exhibit B to the Declaration of Lisa M. Rickenbacher ("Plaintiffs' Special Interrogatories Responses"), Dkt. 622-4, at 4:17-7:15.)

Plaintiffs filed this action in the Superior Court for the County of Los Angeles, raising claims of negligence, breach of express and implied warranties, strict liability in tort, and premises owner/contractor liability. (See Dkt. 1.) The case was removed to federal court and, on January 30, 2015, Defendants General Dynamics and Electric Boat filed motions for summary judgment on each of Plaintiffs' claims. (Dkt. Nos. 619 & 622.) On March 1, 2016, the court denied Defendants' motions for summary judgment in full. (Dkt. 829.) It later issued a Memorandum of Decision ("Summ. J. Mem.") explaining its reasoning. (Dkt. 845.)

Among the issues raised in Defendants' Summary Judgment Motion was whether a strict products liability claim could be brought against shipbuilders, such as Defendants, who built custom ships for the U.S. Navy. (Dkt. 622-1 at 6.) Relying on an out-of-circuit district court case, Defendants argued that a Navy ship should not be considered a "product" for purposes of a strict liability claim. (Id. (citing Mack v. General Electric Co., 896 F. Supp. 2d 333, 345 (E.D. Pa. 2012)).) The court in Mack held that while strict liability could be imposed on manufacturers of a ship's various component products, it could not be imposed on the builder of the ship itself. (Id.) Applied to the present case, the court acknowledged that Mack presented persuasive authority but denied summary judgment on the strict liability claims because it found that there was a genuine issue of material fact as to the involvement of other asbestos-containing products besides Navy ships.

Defendants then filed this Motion for Reconsideration. (Dkt. 852.)

**II. LEGAL STANDARD**

Under Central District of California Local Rule 7-18, a party may seek reconsideration of a decision on any motion on the grounds of:

> (a) a material difference in fact or law from that presented to the Court . . . that . . . could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

3

C.D. Cal. L.R. 7-18. A motion for reconsideration may not, however, "in any manner repeat any oral or written argument made in support of or in opposition to the original motion." Id.

**III. DISCUSSION**

Defendants' Motion for Reconsideration raises only a single issue: does the Ninth Circuit's decision in McIndoe v. Huntington Ingalls, Inc., 817 F.3d 1170 (9th Cir. 2016), which was decided after the court issued its summary judgment order, require reconsideration of the court's prior determination that Defendants were not entitled to summary judgment on Plaintiff's strict liability claims.

    **A.**   **The McIndoe Decision**

In McIndoe, the Ninth Circuit confronted the question of whether a Navy warship was a "product" for purposes of holding a shipbuilder "strictly liable for defects in materials originally installed on the ships they built." Id. at 1173. The case, brought by the legal heirs of James McIndoe, raises a markedly similar fact pattern to the present case. In the 1960s, James McIndoe served on two U.S. Navy ships that contained pipe insulation made from asbestos. Id. at 1172. During McIndoe's service, "[he] was allegedly present during maintenance work involving the removal of pipe insulation that causes asbestos fibers to float in the air he breathed." Id. McIndoe eventually died from complications related to mesothelioma. Id. His heirs brought suit against the companies responsible for building the ships involved, arguing that McIndoe's exposure to asbestos on the ships contributed to his death. Id. One of the claims raised by McIndoe's heirs relied on a theory of strict products liability.

According to the Ninth Circuit, resolving the strict liability question required determining whether Navy warships were "products" in the context of a products-liability claim brought under maritime law. Quoting the Restatement of Torts, the court explained that a "product" subject to strict liability is "'tangible personal property *distributed commercially* for use or consumption.'" Id. at 1173 (quoting Restatement (Third) of Torts: Prods. Liab. § 19(a) (Am. Law Inst. 1998) (emphasis in original)). Based on this definition, the Ninth Circuit concluded that "warships that were never 'distributed commercially'" did not constitute products for the purpose of a strict liability claim. Id. The court further explained that allowing such a broad theory of liability would be inconsistent with the goal of "plac[ing] responsibility on the party most able to prevent harm" Id. Specifically, the court noted that "a ship built under government contract may not even be designed by the builder" and that the "shipbuilder[] does not manufacture–and has little ability to control the quality of–the many thousands of component parts installed on each ship." Id. at 1173-74.

**B.   "Products" at Issue in the Court's Prior Decision**

As an initial matter, it is important to clarify that the court's prior decision regarding strict liability did not turn on a determination of whether a Navy ship constituted a "product" for purposes of stating a claim for strict products liability against the manufacturer of a Navy ship. Indeed, the court's prior decision explained that Mack v. General Electric Co., 896 F. Supp. 2d 333, 345 (E.D. Pa. 2012), which stood for precisely that proposition, was persuasive authority and further noted that "Plaintiffs

apparently do not challenge it." (Summ. J. Mem. 5-6.) Instead, the court denied summary judgment on the grounds that there was a "genuine issue of material fact as to the involvement of other asbestos-containing products besides the Navy ships." (Id. 6.)

In the Motion for Reconsideration, Defendants argue that Plaintiffs have since admitted in discovery that the only products at issue in the case are the USS Lafayette and USS Gato, both Navy ships. (Defendants' Motion for Reconsideration 6.) In support, Defendant's cite to Plaintiffs' Responses to Special Interrogatories where Plaintiffs explain that their claims against Defendants are premised on the fact that, while working on the USS Lafayette and the USS Gato, Defendants' personnel "regularly installed various forms of asbestos-containing insulation in Decedent's immediate presence and vicinity." (Plaintiffs' Special Interrogatories Responses at 21:9-24:3; Exhibit C to the Declaration of Lisa M. Rickenbacher in support of General Dynamic's Mot. for Summ. J., ECF No. 619-4, at 21:9-24:3.) The interrogatory response further explains that Mr. Lund was also on the boat during test-firing of missiles, which heavily shook the submarine and resulted in dust being shaken loose from the insulation. (See Plaintiffs' Special Interrogatories Responses at 22:7-13.)

This purported admission does not justify reconsidering the court's prior determination that there was a triable issue concerning the involvement of "other asbestos-containing products," actually manufactured by the Defendants, under the requirements of Local Rule 7-18. (See Summ. J. Mem. 6.) It is not "a material difference in fact . . . from that presented to the Court" given that the assertions come directly from the evidence submitted with

6

Defendants' prior Motion for Summary Judgment nor was there a manifest "failure to consider material facts." Furthermore, even reexamining the interrogatory responses identified by Defendants, does not lead to the conclusion that the statements constitute an admission that the only products at issue in this case are the Navy ships.

In the Opposition to the Motion for Reconsideration, Plaintiffs reiterate that their case is premised not just on the allegation that Defendants manufactured the Navy ships at issue but also that they manufactured the piping insulation that was installed on the ship.[1] (Opposition to Defendants' Motion for Reconsideration 7.) In support, Plaintiffs identify excerpts from the deposition of Defendants' 30(b)(6) witness who admits that insulation "would be prefabricated, premanufactured, or precut" before it was installed. (Deposition of Bradford Heil, attached as Exhibit B to Declaration of Josiah Parker at 82:23-83:2.) Defendants contend that this statement "does not establish that defendants 'manufacture' anything." (Defendants' Reply to Motion for Reconsideration 7 n.1.)[2] While the court recognizes that this evidence does not prove Defendants manufactured the insulation at issue in the case, it does find that there continues to be a

---

[1] The parties have not adequately developed the issue of when a product is properly considered "manufactured" as opposed to merely "prefabricated" or "precut."

[2] Defendants also challenge reliance on this evidence on the grounds that the testimony was not presented in support of the original Opposition to Defendants' Motion for Summary Judgment. (Defendants' Reply to Motion for Reconsideration 7 n.1.). But the deposition of Defendants' 30(b)(6) witness took place on March 27, 2015, approximately one month after Plaintiffs' opposition was due, and thus could not reasonably have been expected to be included in the original Opposition.

7

triable issue of fact regarding whether other asbestos-containing products were "manufactured" by the Defendants. Specifically, there is a triable question of whether Defendants manufactured the insulation, and thus might still be held liable under a theory of strict products liability.

### C. Applying *McIndoe* to "Products" at Issue

It does not appear that *McIndoe* disturbs the basis of the court's prior decision but, out of an abundance of caution, the court clarifies the effects of the *McIndoe* decision on the present strict liability claims. Defendants argue that, in light of *McIndoe*, Plaintiffs can no longer maintain a strict products liability claim against Defendants on the grounds that Defendants manufactured the ships at issue in the case or installed the component parts.

Plaintiffs raise a number of responses that attempt to narrow the scope of *McIndoe*'s holding and suggest that it does not preclude their precise claims. First, they argue that *McIndoe* only holds that shipyard contractors cannot be held responsible for installing defective products "when their primary role in doing so is building the ship" and not when it is merely maintaining the ship. (Opp'n 2-3.) Thus, if Defendants installed asbestos-containing insulation when building the ship, there would be no claim for strict liability. But here, where Defendants installed the defective insulation as part of maintaining the ship, there is still a claim. This distinction finds no support in the *McIndoe* decision. Indeed, McIndoe himself was not exposed to asbestos during shipbuilding but instead during periods of maintenance. 817 F.3d at 1172.

1      Plaintiffs then argue that <u>McIndoe</u> does not disturb pre-
2 existing Ninth Circuit precedent that shipyard contractors can be
3 held strictly liable for supplying certain defective parts. (Opp'n
4 5.) All but one of the cases Plaintiffs rely on concern commercial
5 ships and not vessels built specifically for the Navy. Given that
6 <u>McIndoe</u> turned expressly on the fact the warships "were never
7 'distributed commercially,'" the court cannot conclude that the
8 ships at issue in this case are not squarely the sort <u>McIndoe</u> held
9 were not "products" for the purposes of a strict products liability
10 claim.
11      Plaintiffs do identify one case that involves a manufacturer
12 building a craft for a military contract. See <u>McKay v. Rockwell</u>
13 <u>International Corp.</u>, 704 F.2d 444 (9th Cir. 1983). Plaintiffs state
14 that under <u>McKay</u>, "shipyard contractors can be held strictly liable
15 for defective products that injure navy serviceman." (Opp'n 6.)
16 <u>McKay</u> does not stand for so broad a proposition. Rather <u>McKay</u>,
17 which involved a liability claim against the manufacturer of an
18 ejection system for military aircrafts, concluded that strict
19 liability is not available against a military supplier where the
20 "United States established, or approved, reasonably precise
21 specifications for the allegedly defective military equipment." 704
22 F.3d at 451. This holding is consistent with <u>McIndoe</u>'s explanation
23 that the goal of strict liability is not advanced where the
24 defective ship "may not even be designed by the builder but instead
25 by the government itself or another outside professional." 817 F.3d
26 at 1174.
27      Applying <u>McIndoe</u> to the facts of this case, the court
28 concludes that Defendants cannot be held strictly liable for

manufacturing the Navy ship at issue in this case because the ships are not "products" in the sense required to state such a claim. McIndoe does not preclude the possibility that a manufacturer of a specific defective product, even when that product is supplied to the military, might still be held responsible under strict products liability. As the Ninth Circuit explained in McIndoe, its decision was based in part on the consideration that "the shipbuilder does not manufacture—and has little ability to control the quality of—the many thousands of component parts installed on each ship." 517 F.3d at 1174. This is not so where the shipyard contractor has actually manufactured a specific asbestos-containing product, and thus could control the quality of the product. Therefore, McIndoe does not require revising the court's prior order to the extent that there continues to be a triable issue of fact whether Defendants manufactured specific products, rather than assembling a collection of component parts into a ship.

**IV. CONCLUSION**

For the reasons set forth above, the court DENIES Defendant's Motion for Reconsideration.

IT IS SO ORDERED.

Dated: August 1, 2016

DEAN D. PREGERSON
United States District Judge